UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


RICHARD SIMPSON,

        Plaintiff,                        CIVIL ACTION NO. 07-13125

      v.                                   DISTRICT JUDGE PAUL V. GADOLA

J. SCOTT, COLEMAN,              MAGISTRATE JUDGE VIRGINIA M. MORGAN
BAKER, STEVENSON, WILLIAMS,
CRANBERRY, HUGH WOLFENBARGER,
MYERS, and KLIMEWICZ[1],

        Defendants.
_____/

## REPORT AND RECOMMENDATION

**I. Introduction**

      This is a *pro se* 42 U.S.C § 1983 action in which the plaintiff, an inmate in the custody of the Michigan Department of Corrections (MDOC), alleges that the defendants[2] deprived plaintiff

---

[1] In their motion for summary judgment (D/E #18), defendants note that the complaint in this matter incorrectly identifies Stephenson as Stevenson, Carberry as Cranberry, and Klimowicz as Klimewicz in the complaint. However, as there has been no formal motion to amend the caption of the case, this Report and Recommendation will use the names as found in the complaint.

[2] The defendants are Macomb Correctional Facility (MCF) employees J. Scott (Deputy Warden), Coleman (Administrative Assistant), Baker (Law Librarian), Stevenson (Assistant Resident Unit Supervisor), Williams (Assistant Resident Unit Supervisor), Cranberry (Deputy Warden), Hugh Wolfenbarger (Warden), Myers (Assistant Deputy), and Klimewicz (Assistant Resident Unit Supervisor). (Complaint, pp. 1, 8)

-1-

of his right under the First Amendment to the United States Constitution to access the courts. The matter comes before the court on Defendants Scott, Baker, Stevenson, Williams, Cranberry, Wolfenbarger and Klimewicz's Motion for Summary Judgment (D/E # 18). For the reasons discussed below, this Court recommends that defendants' motion be **GRANTED** and that Scott, Baker, Stevenson, Williams, Cranberry, Wolfenbarger and Klimewicz be dismissed from this action.[3]

## II. Background

### A. Complaint

On July 26, 2007, plaintiff filed the complaint in this matter (D/E # 1). In that complaint, plaintiff alleges that, on March 26, 2005, plaintiff attempted to copy his habeas corpus petition, but he was not allowed to do so by the librarian because he had too many pages. (Complaint, ¶ 1) The deadline for plaintiff's habeas corpus petition was March 29, 2005. (Complaint, ¶ 2) According to plaintiff, he also talked with, among others, Scott, Baker, Stevenson, Williams, Cranberry, Wolfenbarger and Klimewicz, and they all refused to copy or order someone to copy the papers because plaintiff did not have the necessary funds to copy his petition. (Complaint, ¶ 1)

Plaintiff then contacted his family and requested that they send him an overnight check so he could copy his petition. (Complaint, ¶ 2) However, while the check was received on

---

[3]The remaining defendants, Coleman and Myers, have not yet been served in this matter. On April 17, 2008, their last known addresses were provided under seal (D/E #28). On April 22, 2008, this Court issued an order directing that they be served by the United States Marshal. (D/E #29).

March 28, 2005, the facility refused to process the check until a week had passed. (Complaint, ¶ 2)

Chaplain Archer at MCF eventually agreed to copy plaintiff's habeas corpus petition and, after plaintiff received the copies, he requested that Williams mail them out. (Complaint, ¶ 3) Williams refused to do so, stating that she "didn't have time." (Complaint, ¶ 3) Plaintiff tried again to convince her to mail the documents, but she stated she had a meeting and did not have time to mail plaintiff's documents. (Complaint, ¶ 3)

According to plaintiff, because of defendants' actions, United States District Court Judge Bernard A. Friedman found, on February 21, 2006, that plaintiff's habeas corpus petition failed to comply with the statute of limitations. (Complaint, ¶ 7) Judge Friedman's ruling was upheld by the Sixth Circuit Court of Appeals. (Complaint, ¶ 7)

**B. Pending Motion for Summary Judgment**

On December 19, 2007, defendants filed a motion for summary judgment (D/E # 18). In that motion, defendants argue that they are entitled to summary judgment because they were not personally involved in any denial of legal copies. Defendants also argue that they are entitled to summary judgment because, given that plaintiff's habeas corpus petition was denied on its merits, plaintiff did not suffer any injury. Defendants further argue that Baker and Klimewicz are entitled to summary judgment because plaintiff failed to exhaust his administrative remedies against them. Lastly, defendants argue that they are entitled to Eleventh Amendment and qualified immunities.

On January 9, 2008, plaintiff filed a response to defendants' motion for summary judgment (D/E # 20). In that response, plaintiff argues that his attempts to mail the copies of his habeas corpus petition prior to his deadline were refuted by the named defendants. Plaintiff also argues that he was denied access to the courts where his habeas corpus petition was filed late because of defendants' actions. Plaintiff further argues that, while Klimewicz was not named in any grievance and should be dismissed from this action, Baker was named in a grievance and plaintiff properly exhausted his administrative remedies against Baker. Lastly, plaintiff argues that defendants are not entitled to Eleventh Amendment and qualified immunities given the facts as demonstrated by plaintiff.

**III. Standard of Review**

Defendants move for summary judgment pursuant to Federal Rule of Civil Procedure 56(b), which states that "[a] party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move without or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof." Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the non-movant. See Matsushita Electric Industrial Co., Ltd. et al. v. Zenith Radio Corp., et. al., 475 U.S. 547, 587, 106 S.Ct. 1348, 1356 (1986); see also

B.F. Goodrich Co. v. U.S. Filter Corp., 245 F.3d 587, 591-92 (6th Cir. 2001). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Once the moving party has carried his burden, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita, 475 U.S. at 587, 106 S.Ct. 1348. The opposing party cannot merely rest upon the allegations contained in his pleadings. Rather, he must submit evidence demonstrating that material issues of fact exist. Banks v. Wolfe County Bd. of Educ., 330 F.3d 888, 892 (6th Cir. 2003); Fed. R. Civ. P. 56(e). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587, 106 S.Ct. 1348 (quoting First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 289, 88 S.Ct. 1575, 1592 (1968)).

**IV. Discussion**

    **A. Claims Against Defendants in Their Official Capacities**

As argued by defendants, the Eleventh Amendment bars plaintiffs claims against them to the extent they are sued in their official capacities. The Eleventh Amendment provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another state, or by Citizens or subjects of any foreign State. [U.S. Const. amend. XI.]

"'It is … well established that even though a State is not named a party to the action, the suit may nonetheless be barred by the Eleventh Amendment[,]' if the suit is somehow deemed to be against the State." Doe v. Wigginton, 21 F.3d 733, 736 (6th Cir. 1994), quoting Edelman v.

Jordan, 415 U.S. 651, 663, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). "Whether a suit against State officials in their official capacity is deemed to be against the State depends on whether the plaintiff seeks 'retroactive' or 'prospective' relief". Doe, 21 F.3d at 736. Retroactive relief compensates a plaintiff for a past violation of his legal rights and, while retroactive relief usually takes the form of money damages, that is not necessarily the case. See Cory v. White, 457 U.S. 85, 90 n. 2, 102 S.Ct. 2325, 72 L.Ed.2d 694 (1982); Doe, 21 F.3d at 736-737. Where an official capacity claim is for retroactive relief, the action is deemed to be against the State whose officers are the nominal defendants. Doe, 21 F.3d at 737.

In this case, plaintiff seeks redress from defendants, all of whom are MDOC officials, for past violations of his legal rights and, therefore, the suit is deemed to be against Michigan itself. The State of Michigan, however, has not consented to civil rights suits in federal court. See Johnson v. Dellatifa, 357 F.3d 539, 545 (6th Cir. 2004); Abick v. Michigan, 803 F.2d 874, 877 (6th Cir. 1986); see also Hill v. Michigan, 62 Fed. Appx. 114, 115 (6th Cir. 2003). Therefore, to the extent plaintiff's claims against defendants are construed to be brought against them in their official capacities, the claims are barred by the Eleventh Amendment.

**B. Claims Against Defendants in Their Individual Capacities**

To the extent plaintiff's claims are against them in their individual capacities, defendants argue that they are entitled to qualified immunity. Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." Saucier v. Katz, 533 U.S. 194, 200; 121 S.Ct. 2151; 150 L.Ed.2d 272 (2001), quoting Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). The privilege is an immunity from suit and not a mere defense to

liability. Saucier, 533 U.S. at 200. As a result, courts have "repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation." Hunter v. Bryant, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (per curiam).

"A court should not grant summary judgment on the issue of qualified immunity if there exists a genuine issue of material fact, 'involving an issue on which the question of immunity turns, such that it cannot be determined before trial whether the defendant did acts that violate clearly established rights.'" Flint ex rel. Flint v. Kentucky Dept. of Corrections, 270 F.3d 340, 346-347 (6th Cir. 2001) quoting Poe v. Haydon, 853 F.2d 418, 425-426 (6th Cir. 1988). A court required to rule upon the qualified immunity issue must first consider whether the facts alleged show the officer's conduct violated a constitutional right. Saucier, 533 U.S. at 201. If a violation could be shown, the court must then ask whether that constitutional right was clearly established. "This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition; and it too serves to advance understanding of the law and to allow officers to avoid the burden of trial if qualified immunity is applicable." Saucier, 533 U.S. at 201.

**1. Personal Involvement**

It is well-settled that a § 1983 claim requires some personal involvement by each of the named defendants. See Salehphour v. Univ. of Tenn., 159 F.3d 199, 206 (6th Cir.1998), cert. denied, 526 U.S. 1115, 119 S.Ct. 1763, 143 L.Ed.2d 793 (1999); Copeland v. Machulis, 57 F.3d 476, 481 (6th Cir.1995) (personal involvement by the defendant is an essential element in a § 1983 cause of action asserting a constitutional deprivation).

In this case, defendants argue that plaintiff's own evidence demonstrates that they were not personally involved in the denial of copies. According to defendants, the only evidence in the record documenting a denial of a request for copies reveals that it was Chaplain Archer who signed the denial of the plaintiff's photocopies on March 26, 2005, because plaintiff's funds had not yet been posted to his account. However, in that form, Archer does not appear to have denied any request from plaintiff for copies. Instead Archer checked the "Other" box and wrote that, while plaintiff's funds had not yet posted, plaintiff had a court deadline and copies are approved when funds are not available per MDOC policy directives. See Legal Photocopy Disbursement Authorization Form, attached as Exhibit A to Plaintiff's Complaint.

Archer's form is the only evidence defendants cite to in support of their argument that they were not personally involved in the denial of plaintiff's requests for copies.[4] Given that the form does not support their argument, they have failed to meet their initial burden of demonstrating the absence of a genuine issue as to that issue and, therefore, they are not entitled to summary judgment on the basis of lack of personal involvement. Matsushita, 475 U.S. at 587, 106 S.Ct. 1348.

**2. Injury**

Inmates have a constitutionally protected right of access to the courts. See Bounds v. Smith, 430 U.S. 817, 828, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). However, the right of access to

---

[4]Defendants do argue that it was not any of their jobs to make copies for the plaintiff and that none of them personally denied the plaintiff his photocopies, but they provide no evidence in support of those contentions.

the courts is not unrestricted and does not mean that an inmate must be afforded unlimited litigation resources. See Lewis v. Casey, 518 U.S. 343, 352-55, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996). There is no generalized "right to litigate" which is protected by the First Amendment, Thaddeus-X v. Blatter, 175 F.3d 378, 391 (6th Cir.1999), and an inmate claiming that he was denied access to the courts must show that he suffered an actual litigation-related injury or legal prejudice because of the actions of the defendants. Lewis, 518 U.S. at 349- 51; Boswell v. Mayer, 169 F.3d 384, 387 (6th Cir. 1999); Pilgrim v. Littlefield, 92 F.3d 413, 416 (6th Cir.1996). Thus, not every infringement or inconvenience suffered by the litigating prisoner implicates this constitutional right. As stated in Lewis:

> The requirement that an inmate alleging a violation of Bounds must show actual injury derives ultimately from the doctrine of standing, a constitutional principle that prevents courts of law from undertaking tasks assigned to the political branches. It is the role of courts to provide relief to claimants, in individual or class actions, who have suffered, or will imminently suffer, actual harm; it is not the role of courts, but that of the political branches, to shape the institutions of government in such fashion as to comply with the laws and the Constitution. In the context of the present case: It is for the courts to remedy past or imminent official interference with individual inmates' presentation of claims to the courts; it is for the political branches of the State and Federal Governments to manage prisons in such fashion that official interference with the presentation of claims will not occur. Of course, the two roles briefly and partially coincide when a court, in granting relief against actual harm that has been suffered, or that will imminently be suffered, by a particular individual or class of individuals, orders the alteration of an institutional organization or procedure that causes the harm. But the distinction between the two roles would be obliterated if, to invoke intervention of the courts, no actual or imminent harm were needed, but merely the status of being subject to a governmental institution that was not organized or managed properly. If-to take another example from

> prison life-a healthy inmate who had suffered no deprivation of
> needed medical treatment were able to claim violation of his
> constitutional right to medical care, simply on the ground that the
> prison medical facilities were inadequate, the essential distinction
> between judge and executive would have disappeared: it would
> have become the function of the courts to assure adequate medical
> care in prisons. [Lewis, 518 U.S. at 349-350.] [citations omitted]

In this case, plaintiff claims that defendants caused plaintiff to miss the relevant deadline for his habeas corpus petition and that his habeas corpus petition was ultimately denied as untimely because of defendants' actions. On February 21, 2006, United States District Court Judge Bernard A. Friedman entered an opinion and order granting the respondent's motion for summary judgment and dismissing plaintiff's habeas petition. Simpson v. Wolfenbarger, No. 05-71298, 2006 WL 416189 (E.D. Mich. February 21, 2006) (Friedman, CJ) (attached as part of Exhibit B to Plaintiff's Complaint). In that opinion and order, Judge Friedman concluded both that plaintiff failed to comply with the statute of limitations for his claim and that plaintiff's claims lacked merit. Simpson, 2006 WL 416189 at *1. Specifically, Judge Freidman found that, even assuming plaintiff's habeas petition was not time-barred, his claims have no substantive merit. Simpson, 2006 WL 416189 at *6.

On April 5, 2006, Judge Friedman entered an order denying plaintiff a certificate of appealability, but granting plaintiff's application for leave to appeal *in forma pauperis*. Simpson v. Wolfenbarger, No. 05-71298 (E.D. Mich. April 5, 2006) (order denying certificate of appealability) (attached as part of Exhibit B to Plaintiff's Complaint). The certificate of appealability was denied because, given that plaintiff's underlying claims had no merit, plaintiff failed to make a substantial showing of the denial of a constitutional right.

On November 3, 2006, the United States Court of Appeals for the Sixth Circuit denied plaintiff's application for a certificate of appealability because, regardless of Judge Friedman's procedural ruling, "[r]easonable jurists would not find it debatable whether the Michigan courts applied federal law unreasonably in rejecting [plaintiff's] constitutional claims." (Simpson v. Wolfenbarger, No. 06-1464 (6th Cir. Nov. 3, 2006) (order denying application for certificate of appealability) (attached as part of Exhibit B to Plaintiff's Complaint).

On April 2, 2007, plaintiff's petition for a writ of certiorari was denied by the United States Supreme Court. Simpson v. Wolfenbarger, 127 S.Ct. 1917, 167 L.Ed.2d 571 (2007) (attached as part of Exhibit B to Plaintiff's Complaint).

Thus, while Judge Friedman did find plaintiff's habeas corpus petition to be untimely, he also considered the issues raised and denied the petition on its merits. Moreover, both Judge Friedman and the Sixth Circuit based denial of plaintiff's application for certificate of appealability on the lack of merit in plaintiff's petition. As discussed above, an inmate claiming that he was denied access to the courts must show that he suffered an actual litigation related injury or legal prejudice because of the actions of the defendants. Lewis, 518 U.S. at 349-51. In this case, even if defendants' actions did cause plaintiff's habeas corpus petition to be filed late, plaintiff suffered no legal prejudice from the delay because his petition was addressed on its merits. Given that lack of injury, defendants are entitled to summary judgment.

**3. Exhaustion of Administrative Remedies**

Pursuant to the Prison Litigation Reform Act of 1995 (PLRA), 110 Stat. 1321-71, as amended 42 U.S.C. §§ 1997e *et seq*., "[n]o action shall be brought with respect to prison

conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Accordingly, exhaustion of available administrative remedies is mandatory in order for prisoners to bring a claim in federal court. Jones v. Bock, __ U.S. __, __, 127 S.Ct. 910, 914, 166 L.Ed.2d 798 (2007); Woodford v. Ngo, __ U.S. __, __, 126 S.Ct. 2378, 2383, 165 L.Ed.2d 368 (2006). Not only must the prisoner exhaust all available remedies but such exhaustion must be proper, including "compliance with an agency's deadlines and other critical procedural rules." Woodford, 126 S.Ct. at 2386 (holding that an inmate's exhaustion must be in compliance with applicable grievance procedures, specifically deadlines, because "no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings"). However, § 1997e does not impose a jurisdictional bar to federal jurisdiction, Curry v. Scott, 249 F.3d 493, 501-503 (6th Cir. 2001), and while the preferred practice is for inmates to complete the grievance process prior to the filing of an action, "because the exhaustion requirement is not jurisdictional, district courts have some discretion in determining compliance with the statute." Wyatt v. Leonard, 193 F.3d 876, 879 (6th Cir. 1999).

In this case, according to defendants, plaintiff failed to name defendants Baker or Klimewicz in any grievance and, therefore, his claims against them are not properly exhausted. (Defendants' Motion for Summary Judgment, p. 8) Plaintiff concedes that he has not properly exhausted his administrative remedies as to Klimewicz and that Klimewicz should therefore be dismissed from this action. (Plaintiff's Response to Defendants' Motion for Summary Judgment, p. 5) However, plaintiff also correctly notes that he did name Baker in a grievance.

On April 22, 2005, plaintiff filed a grievance regarding the alleged failure of MDOC officials to aid plaintiff in copying his habeas corpus documents. (Grievance MRF 0505-762-28e Form, attached at part of Exhibit D to Plaintiff's Complaint) In that grievance, plaintiff specifically names Baker as one of the people who denied him copies. At Step I, that grievance was rejected because it was untimely, plaintiff failed to follow policy in writing the grievance by failing to put his additional information on a separate page, and plaintiff failed to follow procedure by attempting to grieve multiple staff on one form. (Grievance MRF 0505-762-28e, Step I Response, attached at part of Exhibit D to Plaintiff's Complaint) The grievance was also denied at Step II because the "[f]irst step response accurately addressed your concerns. You may not grieve multiple issues on one grievance. Please review 03.02.130 grievance procedure on proper filing. Grievance denied." (Grievance MRF 0505-762-28e, Step II Response, attached as part of Exhibit D to Plaintiff's Complaint) Plaintiff appeal his grievance to Step III, but it was rejected at Step III because it was untimely and contained multiple issues. (Step Three Grievance Response, attached as part of Exhibit D to Complaint)

Given the outcome of that grievance, plaintiff has failed to properly exhaust his claim against Baker. As discussed above, proper exhaustion includes compliance with an agency's critical procedural rules because "no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Woodford, 126 S.Ct. at 2386. With respect to his claim against Baker, plaintiff failed to follow MDOC's critical procedural rules and MDOC never ruled on the merits of plaintiff's claim against Baker.

Given plaintiff's failure to properly exhaust his administrative remedies with respect to Baker and Klimewicz, they could be dismissed on that basis. See Jones, 127 S.Ct. at 914; Woodford, 126 S.Ct. at 2386.

**V. Conclusion**

For the reasons discussed above, the court recommends that defendants' motion for summary judgment be **GRANTED** on the grounds that plaintiff has not suffered a litigation-related injury and consequently that Scott, Baker, Stevenson, Williams, Cranberry, Wolfenbarger and Klimewicz be dismissed from this action. As noted above, the remaining defendants would be Coleman and Myers, and they have not yet been served in this matter. On April 17, 2008, their last known addresses were provided under seal (D/E #28). On April 22, 2008, this Court issued an order directing that they be served by the Marshals Service without prepayment of costs (D/E #29).

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987).

Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

s/Virginia M. Morgan<br>
Virginia M. Morgan<br>
United States Magistrate Judge

Dated: May 15, 2008

---

### PROOF OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and plaintiff via the Court's ECF System and/or U. S. Mail on May 15, 2008.

s/Jane Johnson<br>
Case Manager to<br>
Magistrate Judge Virginia M. Morgan