UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


RICHARD SIMPSON,

               Plaintiff,                    CIVIL ACTION NO. 07-13125

        v.                            DISTRICT JUDGE STEPHEN J. MURPHY, III

COLEMAN and MYERS,              MAGISTRATE JUDGE VIRGINIA M. MORGAN

               Defendants.[1]

_____/

## REPORT AND RECOMMENDATION

### I. Introduction

      This is a *pro se* 42 U.S.C § 1983 action in which the plaintiff, an inmate in the custody of

the Michigan Department of Corrections (MDOC), alleges that the defendants deprived plaintiff

of his right under the First Amendment to the United States Constitution to access the courts.

The matter comes before the Court on Defendant Coleman's Motion for Summary Judgment

(D/E #35).  For the reasons discussed below, this Court recommends that Coleman's motion be

_____

[1]The defendants were Macomb Correctional Facility (MRF) employees J. Scott (Deputy Warden), Coleman (Administrative Assistant), Baker (Law Librarian), Stevenson (Assistant Resident Unit Supervisor), Williams (Assistant Resident Unit Supervisor), Cranberry (Deputy Warden), Hugh Wolfenbarger (Warden), Myers (Assistant Deputy), and Klimewicz (Assistant Resident Unit Supervisor).  (Complaint, pp. 1, 8)  On May 15, 2008, this Court issued a report recommending that defendants J. Scott, Baker, Stevenson, Williams Cranberry, Hugh Wolfenbarger and Klimewicz be granted summary judgment (D/E #33).  On June 20, 2008, the Honorable Paul V. Gadola issued an order adopting that Report and Recommendation (D/E #34). Therefore, defendants Coleman and Myers are the only defendants remaining in this action.

**GRANTED** because the claim against Coleman in her official capacity is barred by the Eleventh Amendment to the United States Constitution and, with respect to the claim against Coleman in her individual capacity, plaintiff did not suffer any litigation-related injuries from the alleged denial of access to the courts.  Coleman is also entitled to summary judgment because plaintiff failed to properly exhaust his administrative remedies prior to filing suit.

This Court also recommends that defendant Myers be dismissed *sua sponte* because he has never been served with a summons and complaint in this matter and no good cause exists for excusing that lack of service.  Moreover, if he were ever served, Myers would be entitled to summary judgment for the same reasons Coleman is entitled to summary judgment.

As Coleman and Myers are the only defendants remaining in this action, this Court further recommends that this case be dismissed with prejudice after defendants are granted summary judgment or dismissed.

## II. Background

### A. Complaint

On July 26, 2007, plaintiff filed the complaint in this matter (D/E # 1).  In that complaint, plaintiff alleges that, on March 26, 2005, plaintiff attempted to photocopy his habeas corpus petition, but he was not allowed to do so by the librarian because he had too many pages. (Complaint, ¶ 1)  The deadline for plaintiff's habeas corpus petition was March 29, 2005. (Complaint, ¶ 2)  According to plaintiff's complaint, he also talked with, among others, Coleman and Myers, and both refused to copy or order someone to copy the papers because plaintiff did not have the necessary funds to copy his petition.  (Complaint, ¶ 1)

Plaintiff also alleges that he then contacted his family and requested that they send him an overnight check so he could copy his petition. (Complaint, ¶ 2) However, while the check was received on March 28, 2005, the facility refused to process the check until a week had passed. (Complaint, ¶ 2)

Plaintiff further alleges that Chaplain Archer at MCF eventually agreed to copy plaintiff's habeas corpus petition and, after plaintiff received the copies, he requested that Williams mail them out. (Complaint, ¶ 3) Plaintiff claims that Williams refused to do so, stating that she "didn't have time" and that, when plaintiff tried again to convince her to mail the documents, she stated she had a meeting and did not have time to mail plaintiff's documents. (Complaint, ¶ 3)

According to plaintiff, because of defendants' actions, United States District Court Judge Bernard A. Friedman found, on February 21, 2006, that plaintiff's habeas corpus petition failed to comply with the statute of limitations. (Complaint, ¶ 7) Judge Friedman's ruling was upheld by the Sixth Circuit Court of Appeals. (Complaint, ¶ 7)

**B. Pending Motion for Summary Judgment**

On June 23, 2008, defendant Coleman filed a motion for summary judgment (D/E #35). In that motion, Coleman argues that she is entitled to summary judgment because plaintiff did not suffer any injury from the alleged denial of access to the courts. Coleman also argues that plaintiff failed to exhaust his administrative remedies against her. Coleman further argues that she is entitled to Eleventh Amendment immunity and qualified immunity.

-3-

On July 7, 2007, plaintiff filed a response to Coleman's motion for summary judgment (D/E #37).  In that response, plaintiff argues that he suffered an injury by the denial of access to the courts because his petition for habeas corpus was filed late as a result of defendants' actions.  Plaintiff also argues that he exhausted his administrative remedies as to Coleman because Coleman was named in a grievance.  Plaintiff further argues that Coleman is not entitled to Eleventh Amendment or qualified immunity because the United States Constitution does not permit inhumane prisons.

### III. Standard of Review

Coleman moves for summary judgment pursuant to Federal Rule of Civil Procedure 56(b), which states that "[a] party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move without or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof."  Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).

In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the non-movant.  See Matsushita Electric Industrial Co., Ltd. et al. v. Zenith Radio Corp., et. al., 475 U.S. 547, 587, 106 S.Ct. 1348, 1356 (1986); see also B.F. Goodrich Co. v. U.S. Filter Corp., 245 F.3d 587, 591-92 (6th Cir. 2001).  The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  Once

the moving party has carried his burden, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial." <u>Matsushita</u>, 475 U.S. at 587, 106 S.Ct. 1348.  The opposing party cannot merely rest upon the allegations contained in his pleadings.  Rather, he must submit evidence demonstrating that material issues of fact exist. <u>Banks v. Wolfe County Bd. of Educ.</u>, 330 F.3d 888, 892 (6th Cir. 2003); Fed. R. Civ. P. 56(e). "Where the record taken as a whole could not lead a rational trier of <u>fact </u>to find for the non-moving party, there is no 'genuine issue for trial.'" <u>Matsushita</u>, 475 U.S. at 587, 106 S.Ct. 1348 (<u>quoting</u> <u>First National Bank of Arizona v. Cities Service Co.</u>, 391 U.S. 253, 289, 88 S.Ct. 1575, 1592 (1968)).

**IV. Discussion**

 **A. Coleman**

  As noted above, on May 15, 2008, this Court issued a Report recommending that defendants J. Scott, Baker, Stevenson, Williams Cranberry, Hugh Wolfenbarger and Klimewicz be granted summary judgment (D/E #33) and, on June 20, 2008, the Honorable Paul V. Gadola issued an order adopting that Report and Recommendation (D/E #34).  Those defendants were granted summary judgment because of Eleventh Amendment immunity and the fact that plaintiff has not suffered a litigation-related injury.  Defendants Baker and Klimewicz were also entitled to summary judgment because, with respect to the claims against them, plaintiff failed to properly exhaust his administrative remedies prior to filing suit.  Coleman seeks summary judgment on the same grounds and using the same reasoning as the other defendants, and her motion for summary judgment should also be granted.

**1. Claim Against Coleman in her Official Capacity**

As argued by Coleman, the Eleventh Amendment bars plaintiff's claim against her to the extent she is sued in her official capacity.  The Eleventh Amendment provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another state, or by Citizens or subjects of any foreign State. [U.S. Const. amend. XI.]

"'It is … well established that even though a State is not named a party to the action, the suit may nonetheless be barred by the Eleventh Amendment[,]' if the suit is somehow deemed to be against the State."  Doe v. Wigginton, 21 F.3d 733, 736 (6th Cir. 1994), quoting Edelman v. Jordan, 415 U.S. 651, 663, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974).  "Whether a suit against State officials in their official capacity is deemed to be against the State depends on whether the plaintiff seeks 'retroactive' or 'prospective' relief'."  Doe, 21 F.3d at 736.  Retroactive relief compensates a plaintiff for a past violation of his legal rights and, while retroactive relief usually takes the form of money damages, that is not necessarily the case.  See Cory v. White, 457 U.S. 85, 90 n. 2, 102 S.Ct. 2325, 72 L.Ed.2d 694 (1982); Doe, 21 F.3d at 736-737.  Where an official capacity claim is for retroactive relief, the action is deemed to be against the State whose officers are the nominal defendants.  Doe, 21 F.3d at 737.

In this case, plaintiff seeks redress from Coleman, who is an MDOC official, for past violations of his legal rights and, therefore, the suit is deemed to be against Michigan itself.  The State of Michigan, however, has not consented to civil rights suits in federal court.  See Johnson v. Dellatifa, 357 F.3d 539, 545 (6th Cir. 2004); Abick v. Michigan, 803 F.2d 874, 877 (6th Cir.

-6-

1986); see also Hill v. Michigan, 62 Fed. Appx. 114, 115 (6th Cir. 2003). Therefore, to the

extent plaintiff's claim against Coleman is brought against her in her official capacities, the

claims are barred by the Eleventh Amendment.

### 2. Claim Against Coleman in Her Individual Capacity

To the extent plaintiff's claim is against Coleman in her individual capacity, Coleman

argues that she is entitled to qualified immunity. Qualified immunity is "an entitlement not to

stand trial or face the other burdens of litigation." Saucier v. Katz, 533 U.S. 194, 200; 121 S.Ct.

2151; 150 L.Ed.2d 272 (2001), quoting Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S.Ct. 2806,

86 L.Ed.2d 411 (1985). The privilege is an immunity from suit and not a mere defense to

liability. Saucier, 533 U.S. at 200. As a result, courts have "repeatedly have stressed the

importance of resolving immunity questions at the earliest possible stage in litigation." Hunter

v. Bryant, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (per curiam).

"A court should not grant summary judgment on the issue of qualified immunity if there

exists a genuine issue of material fact, 'involving an issue on which the question of immunity

turns, such that it cannot be determined before trial whether the defendant did acts that violate

clearly established rights.'" Flint ex rel. Flint v. Kentucky Dept. of Corrections, 270 F.3d 340,

346-347 (6th Cir. 2001) quoting Poe v. Haydon, 853 F.2d 418, 425-426 (6th Cir. 1988). A court

required to rule upon the qualified immunity issue must first consider whether the facts alleged

show the officer's conduct violated a constitutional right. Saucier, 533 U.S. at 201. If a violation

could be shown, the court must then ask whether that constitutional right was clearly established.

"This inquiry, it is vital to note, must be undertaken in light of the specific context of the case,

-7-

not as a broad general proposition; and it too serves to advance understanding of the law and to

allow officers to avoid the burden of trial if qualified immunity is applicable."  Saucier, 533 U.S.

at 201.

Coleman argues that there was no constitutional violation in this case because plaintiff

did not suffer any injury from the alleged denial of access to the courts.  Inmates have a

constitutionally protected right of access to the courts.  See Bounds v. Smith, 430 U.S. 817, 828,

97 S.Ct. 1491, 52 L.Ed.2d 72 (1977).  However, the right of access to the courts is not

unrestricted and does not mean that an inmate must be afforded unlimited litigation resources.

See Lewis v. Casey, 518 U.S. 343, 352-55, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996).  There is no

generalized "right to litigate" which is protected by the First Amendment, Thaddeus-X v. Blatter,

175 F.3d 378, 391 (6th Cir.1999), and an inmate claiming that he was denied access to the courts

must show that he suffered an actual litigation-related injury or legal prejudice because of the

actions of the defendants.  Lewis, 518 U.S. at 349- 51; Boswell v. Mayer, 169 F.3d 384, 387 (6th

Cir. 1999); Pilgrim v. Littlefield, 92 F.3d 413, 416 (6th Cir.1996).  Thus, not every infringement

or inconvenience suffered by the litigating prisoner implicates this constitutional right.  As stated

in Lewis:

> The requirement that an inmate alleging a violation of Bounds
> must show actual injury derives ultimately from the doctrine of
> standing, a constitutional principle that prevents courts of law from
> undertaking tasks assigned to the political branches.  It is the role
> of courts to provide relief to claimants, in individual or class
> actions, who have suffered, or will imminently suffer, actual harm;
> it is not the role of courts, but that of the political branches, to
> shape the institutions of government in such fashion as to comply
> with the laws and the Constitution.  In the context of the present

> case:  It is for the courts to remedy past or imminent official
> interference with individual inmates' presentation of claims to the
> courts; it is for the political branches of the State and Federal
> Governments to manage prisons in such fashion that official
> interference with the presentation of claims will not occur.  Of
> course, the two roles briefly and partially coincide when a court, in
> granting relief against actual harm that has been suffered, or that
> will imminently be suffered, by a particular individual or class of
> individuals, orders the alteration of an institutional organization or
> procedure that causes the harm. But the distinction between the
> two roles would be obliterated if, to invoke intervention of the
> courts, no actual or imminent harm were needed, but merely the
> status of being subject to a governmental institution that was not
> organized or managed properly. If-to take another example from
> prison life-a healthy inmate who had suffered no deprivation of
> needed medical treatment were able to claim violation of his
> constitutional right to medical care, simply on the ground that the
> prison medical facilities were inadequate, the essential distinction
> between judge and executive would have disappeared: it would
> have become the function of the courts to assure adequate medical
> care in prisons.  [Lewis, 518 U.S. at 349-350.] [citations omitted]

In this case, plaintiff claims that defendants caused plaintiff to miss the relevant deadline for his habeas corpus petition and that his habeas corpus petition was ultimately denied as untimely because of defendants' actions.  On February 21, 2006, United States District Court Judge Bernard A. Friedman entered an opinion and order granting the respondent's motion for summary judgment and dismissing plaintiff's habeas petition.  Simpson v. Wolfenbarger, No. 05-71298, 2006 WL 416189 (E.D. Mich. February 21, 2006) (Friedman, CJ) (attached as part of Exhibit B to Plaintiff's Complaint).  In that opinion and order, Judge Friedman concluded both that plaintiff failed to comply with the statute of limitations for his claim and that plaintiff's claims lacked merit.  Simpson, 2006 WL 416189 at *1.  Specifically, Judge Freidman found that,

even assuming plaintiff's habeas petition was not time-barred, his claims have no substantive merit.  Simpson, 2006 WL 416189 at *6.

On April 5, 2006, Judge Friedman entered an order denying plaintiff a certificate of appealability, but granting plaintiff's application for leave to appeal *in forma pauperis*.  Simpson v. Wolfenbarger, No. 05-71298 (E.D. Mich. April 5, 2006) (order denying certificate of appealability) (attached as part of Exhibit B to Plaintiff's Complaint).  The certificate of appealability was denied because, given that plaintiff's underlying claims had no merit, plaintiff failed to make a substantial showing of the denial of a constitutional right.

On November 3, 2006, the United States Court of Appeals for the Sixth Circuit denied plaintiff's application for a certificate of appealability because, regardless of Judge Friedman's procedural ruling, "[r]easonable jurists would not find it debatable whether the Michigan courts applied federal law unreasonably in rejecting [plaintiff's] constitutional claims."  (Simpson v. Wolfenbarger, No. 06-1464 (6th Cir. Nov. 3, 2006) (order denying application for certificate of appealability) (attached as part of Exhibit B to Plaintiff's Complaint).

On April 2, 2007, plaintiff's petition for a writ of certiorari was denied by the United States Supreme Court.  Simpson v. Wolfenbarger, 127 S.Ct. 1917, 167 L.Ed.2d 571 (2007) (attached as part of Exhibit B to Plaintiff's Complaint).

Thus, while Judge Friedman did find plaintiff's habeas corpus petition to be untimely, he also considered the issues raised and denied the petition on its merits.  Moreover, both Judge Friedman and the Sixth Circuit based the denial of plaintiff's application for certificate of appealability on the lack of merit in plaintiff's petition.  As discussed above, an inmate claiming

that he was denied access to the courts must show that he suffered an actual litigation related

injury or legal prejudice because of the actions of the defendants.  Lewis, 518 U.S. at 349- 51.  In

this case, even if Coleman's actions did cause plaintiff's habeas corpus petition to be filed late,

plaintiff suffered no legal prejudice from the delay because his petition was addressed on its

merits.  Given that lack of injury, Coleman is entitled to summary judgment.

### 3. Exhaustion of Administrative Remedies

Coleman also argues that she is entitled to summary judgment because plaintiff failed to

exhaust his administrative remedies prior to filing this lawsuit.  Pursuant to the Prison Litigation

Reform Act of 1995 (PLRA), 110 Stat. 1321-71, as amended 42 U.S.C. §§ 1997e *et seq*., "[n]o

action shall be brought with respect to prison conditions under section 1983 of this title, or any

other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until

such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).

Accordingly, exhaustion of available administrative remedies is mandatory in order for prisoners

to bring a claim in federal court.  Jones v. Bock, __ U.S. __, __, 127 S.Ct. 910, 914, 166 L.Ed.2d

798 (2007); Woodford v. Ngo, __ U.S. __, __, 126 S.Ct. 2378, 2383, 165 L.Ed.2d 368 (2006).

Not only must the prisoner exhaust all available remedies but such exhaustion must be proper,

including "compliance with an agency's deadlines and other critical procedural rules."

Woodford, 126 S.Ct. at 2386 (holding that an inmate's exhaustion must be in compliance with

applicable grievance procedures, specifically deadlines, because "no adjudicative system can

function effectively without imposing some orderly structure on the course of its proceedings").

However, § 1997e does not impose a jurisdictional bar to federal jurisdiction, Curry v. Scott, 249

F.3d 493, 501-503 (6th Cir. 2001), and while the preferred practice is for inmates to complete the grievance process prior to the filing of an action, "because the exhaustion requirement is not jurisdictional, district courts have some discretion in determining compliance with the statute." Wyatt v. Leonard, 193 F.3d 876, 879 (6th Cir. 1999).

In this case, according to Coleman, plaintiff failed to name Coleman in any timely failed grievance and, therefore, plaintiff's claims against her are not properly exhausted.  (Coleman's Motion for Summary Judgment, p. 8)  In response, plaintiff points to Grievance MRF 0505-762-28e, in which plaintiff specifically names Coleman as one of the people who denied him copies. (Grievance MRF 0505-762-28e Form, attached at part of Exhibit A to Plaintiff's Response to Coleman's Motion for Summary Judgment)  However, at Step I, that grievance was rejected because it was untimely, plaintiff failed to follow policy in writing the grievance by failing to put his additional information on a separate page, and plaintiff failed to follow procedure by attempting to grieve multiple staff on one form.  (Grievance MRF 0505-762-28e, Step I Response, attached at part of Exhibit A to Plaintiff's Response to Coleman's Motion for Summary Judgment)  The grievance was also denied at Step II because the "[f]irst step response accurately addressed your concerns.  You may not grieve multiple issues on one grievance. Please review 03.02.130 grievance procedure on proper filing.  Grievance denied."  (Grievance MRF 0505-762-28e, Step II Response, attached as part of Exhibit A to Plaintiff's Complaint, Response to Coleman's Motion for Summary Judgment)  Plaintiff appeal his grievance to Step III, but it was rejected at Step III because it was untimely and contained multiple issues.

-12-

(Grievance MRF 0505-762-28e, Step Three Grievance Response, attached as part of Exhibit A to Plaintiff's Response to Coleman's Motion for Summary Judgment)

Given the outcome of that grievance, plaintiff has failed to properly exhaust his claim against Coleman.  As discussed above, proper exhaustion includes compliance with an agency's critical procedural rules because "no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."  Woodford, 126 S.Ct. at 2386. With respect to his claim against Coleman, plaintiff failed to follow MDOC's critical procedural rules and MDOC never ruled on the merits of plaintiff's claim against Baker.  Given plaintiff's failure to properly exhaust his administrative remedies with respect to Coleman, Coleman is entitled to summary judgment on that basis.  See Jones, 127 S.Ct. at 914;  Woodford, 126 S.Ct. at 2386.

### B. Myers

On July 26, 2007, plaintiff filed the complaint against defendants in this matter (D/E #1). Following the filing of the complaint, the Honorable R. Steven Whalen issued an order directing service without prepayment of costs and authorizing the United States Marshal's Service to collect costs after service was made (D/E #6).  All of the defendants, with the exception of Myers and Coleman were subsequently served (D/E #8-16).

On January 11, 2008, this Court ordered that the MDOC provide, in camera, the last known address of Myers and Coleman (D/E #21).  After the MDOC provided that address, this Court issued an order directing the United States Marshal's Service to serve those two defendants (D/E #29).  The United States Marshal's Service acknowledged receipt of the service

of process documents on April 23, 2008 (D/E #30).  Coleman was subsequently served (D/E #32), but Myers has not been served and another waiver of service has been returned unexecuted (D/E #31)

The Federal Rules of Civil Procedure Rule 4(c)(1) provides that a plaintiff is responsible for serving the summons and complaint within the applicable time period.  Without such personal service, a district court is without jurisdiction to render judgment against a defendant.  <u>Friedman v. Estate of Presser</u>, 929 F.2d 1151, 1156 (6th Cir. 1991).  The time limit for service of process is 120 days after the filing of the complaint.  Fed.R.Civ.P. 4(m).  "Absent a showing of good cause to justify a failure to effect timely service, the Federal Rules of Civil Procedure compel dismissal."  <u>Byrd v. Stone</u>, 94 F.3d 217, 219 (6th Cir. 1996), citing <u>Habib v. Gen. Motors Corp.</u>, 15 F.3d 72, 73 (6th Cir. 1994).

The plaintiff generally bears responsibility for appointing an appropriate person to serve a copy of his complaint and the summons upon a defendant.  Fed.R.Civ.P. 4(c)(1).  The appointed person is usually a commercial process server plaintiff has contracted with to effectuate service for a fee.  "In the case of a plaintiff proceeding *in forma pauperis*, however, the assumption is that, because the plaintiff cannot pay fees and costs, it is likely the plaintiff cannot afford to hire a process server."  <u>Byrd</u>, 94 F.3d at 219.  For this reason, 28 U.S.C. § 1915(c) provides that the officers of the court "shall issue and serve all process" when a plaintiff is proceeding *in forma pauperis*.  "Fed. R. Civ. P. 4(c)(2) dovetails with § 1915(c) by providing that the court must appoint a United States Marshal to serve plaintiff's process 'when the plaintiff is authorized to proceed in forma pauperis pursuant to 28 U.S.C. § 1915.'"  <u>Byrd</u>, 94

-14-

F.3d at 219 (quoting Fed. R. Civ. P. 4(c)(2)).  "Together, Rule 4(c)(2) and 28 U.S.C. § 1915(c) stand for the proposition that when a plaintiff is proceeding *in forma pauperis* the court is obligated to issue plaintiff's process to a United States Marshal who must in turn effectuate service upon the defendants, thereby relieving a plaintiff of the burden to serve process once reasonable steps have been taken to identify for the court the defendants named in the complaint."  Byrd, 94 F.3d at 219.  See also Olsen v. Mapes, 333 F.3d 1199, 1204-05 (10th Cir. 2003) (holding that *in forma pauperis* plaintiffs were not culpable for failure to timely serve where there was no evidence that they failed to cooperate with the Marshals Service); Young v. Quinlan, 960 F.2d 351, 359 (3d Cir. 1992) (holding that *in forma pauperis* plaintiff "should not be penalized for failure to effect service where it failed through no fault of his own."); Rochon v. Dawson, 828 F.2d 1107, 1110 (5th Cir. 1987) ("a plaintiff proceeding *in forma pauperis* is entitled to rely upon service by the U.S. Marshals and should not be penalized for failure of the Marshal's Service to properly effect service of process, where such failure is through no fault of the litigant.").

However, "although an incarcerated plaintiff proceeding *in forma pauperis* may rely on service by the U.S. Marshals, he 'may not remain silent and do nothing to effectuate such service.'"  Abel v. Harp, 122 Fed. Appx. 248, 252, (6th Cir. 2005) (quoting Rochon, 828 F.2d at 1110).  "At a minimum, he should 'request service upon the appropriate defendant and attempt to remedy any apparent service defects of which a plaintiff has knowledge.'"  Abel, 122 Fed. Appx. at 252 (quoting Rochon, 828 F.2d at 1110).

-15-

Defendant Myers has not been served and the deadline for timely service has long since passed. Moreover, no good cause is exists which would excuse lack of timely service. While plaintiff is proceeding *in forma pauperis* and should therefore be able to rely on the U.S. Marshals for service, plaintiff contributed to the initial failure to serve Myers and he sat idly by after that initial failure to serve. While all of the defendants besides Myers and Coleman were served, the U.S. Marshal's Service was unable to serve Myers given the information provided by plaintiff. Plaintiff was presumably aware of that unexecuted waiver of service, but he did nothing to help remedy the situation. This Court then took the extra step of ordering the MDOC to provide the last known address of Myers. The MDOC did provide the last known address of Myers, but the U.S. Marshal's Service was still unable to effectuate service. Moreover, while the second waiver of service for Myers was returned unexecuted on May 8, 2008, plaintiff has remained idle. Given plaintiff's inaction and the steps taken by this Court and the U.S. Marshal's Service, no good cause exists to excuse the lack of timely service and defendant Myers should be dismissed from this action.[2]

**V. Conclusion**

For the reasons discussed above, the Court recommends that Coleman's motion be **GRANTED** because the claim against Coleman in her official capacity is barred by the Eleventh Amendment to the United States Constitution and, with respect to the claim against Coleman in

---

[2]This Court would also note that, if Myers were ever served, he would be entitled to summary judgment for the same reasons Coleman is entitled to summary judgment as plaintiff's claim against him in his official capacity is barred by the Eleventh Amendment and, with respect to the claim against Myers in his individual capacity, plaintiff did not suffer any injuries from the alleged denial of access to the courts.

her individual capacity, plaintiff did not suffer any litigation-related injuries from the alleged denial of access to the courts.  Coleman is also entitled to summary judgment because plaintiff failed to properly exhaust his administrative remedies prior to filing suit.

This Court also recommends that defendant Myers be dismissed *sua sponte* because he has never been served with a summons and complaint in this matter and no good cause exists for excusing that lack of service.  Moreover, if he were ever served, Myers would be entitled to summary judgment for the same reasons Coleman is entitled to summary judgment.

As Coleman and Myers are the only defendants remaining in this action, this Court further recommends that this case be dismissed with prejudice after defendants are granted summary judgment or dismissed.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

-17-

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court.  The response shall address each issue contained within the objections specifically and in the same order raised.

s/Virginia M. Morgan
Virginia M. Morgan
United States Magistrate Judge

Dated: January 14, 2009

---

**PROOF OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and plaintiff via the Court's ECF System and/or U. S. Mail on January 14, 2009.

s/Jane Johnson
Case Manager to
Magistrate Judge Virginia M. Morgan